## Case No. 10,243.
### NICHOLS v. HARRIS.
[1 MacA. Pat. Cas. 302.]

Circuit Court, District of Columbia. May, 1854.

INTERFERENCES IN PATENT CASES — COMPETENCY OF WITNESSES — CROSS-EXAMINATION — TAKING DEPOSITIONS — COMPETENCY OF MAGISTRATE INTERESTED AS COUNSEL.

[1. The wife of a party to an interference is incompetent to testify in his behalf.]

[2. The action of a magistrate taking a deposition, in excluding a question on cross-examination, cannot be sustained on the ground that, if intended to affect the credibility of the witness, counsel should have so stated when the objection was made; for this would defeat the object of the question. especially where the witness has shown himself unfair and suspicious.]

[3. A witness who, on direct examination, refers to and partially describes a device of his own, cannot refuse, on cross-examination, to give a further description on the ground of exposing his private affairs.]

[4. A magistrate who is a partner of the active counsel of one of the parties to an interference is incompetent to take depositions therein, and depositions taken before him without knowledge by the opposite party of the partnership relation are inadmissible.]

[This was an appeal by James R. Nichols from a decision of the commissioner of patents, in an interference proceeding, awarding priority of invention to Elbridge Harris.]

Hubbard & Pinkerton and Page & Co., for appellant.

MORSELL, Circuit Judge. The commissioner having declared and decided the interference, and notified the parties thereof on the 15th of November, 1853, appointed the first Monday in January then next for a hearing, in comformity with the provisions of the act of July the 4th, 1836 [5 Stat. 117], and directed that the testimony must be in conformity with the rules therein inclosed, under the oath or affirmation of persons who were not interested in the question at issue, &c., which rules were established by the commissioner of patents by authority of the twelfth section of the act of 3d March, 1839, by which it is enacted "that the commissioner of patents shall have power to make all such regulations in respect to the taking of evidence to be used in contested cases before him as may be just and reasonable." The third rule is in these words: "That before the deposition of a witness or witnesses be taken by either party, notice shall be given ·to the opposite party of the time and place when and where such deposition or depositions will be taken; so that the opposite party, either in person or by attorney, shall have full opportunity to cross-examine the witness or witnesses; and such notice shall, with proof of service of the same, be attached to the deposition or depositions whether the party cross-examine or not; and such notice shall be given in sufficient time for the appearance of the opposite party and for the transmission of the evidence to the patent office before the day of hearing." Arnold v. Bishop [Case No. 552].

The depositions on the part of the appellee appear to have been taken, after notice given, before a justice of the peace within and for the county of Suffolk, commonwealth of Massachusetts—he certifies himself to be such—and that the witnesses stated in his return were duly sworn by him to testify the truth, and that they were examined on written interrogatories, and their testimony taken in writing by him as therein written, and carefully read by him to the deponents, and subscribed by them in his presence to be used, &c.; that Nichols, by his attorney, G. G. Hubbard, Esq.. attended the taking said depositions. He states, also, that after all the depositions were taken and signed, and proceedings closed, Mr. G. G. Hubbard desired the magistrate to state that he was a partner of Mr. H. F. Smith. Gardiner G. Hubbard, who acted as attorney for Nichols, the appellant, states, in an affidavit made by him before a justice of the peace, that as counsel for James R. Nichols he was present at the examination of the several witnesses examined on the part of Elbridge Harris. as mentioned in the proceeding just alluded to; that he had no prior acquaintance with either the counsel for said Harris or the magistrate in whose name the summons was issued; that in going to the office of the magistrate he found it the same with the office of the counsel; that it occurred to him at once that they might be partners; but, thinking he might be mistaken, as he had never before in his practice known of anything of the

kind, he made no inquiries, but went on with the examination until they came to the examination of John Newell. He proposed an interrogatory to said Newell, to which he declined answering. The point was then argued, and the magistrate decided that he must answer it. The witness still refused, and advised with his counsel, who informed him that he was not bound to answer the interrogatory, when the magistrate, without giving any reason, changed his decision, and decided that the witness was not bound to answer the question. Whereupon he (the affiant) asked him if he were not the partner of Mr. Smith, and of counsel for Mr. Harris; and he replied that he was; that said affiant then objected to all the evidence, and particularly that of Newell, and declined going on any further with the examination before a magistrate who was judge and also counsel; that he requested the magistrate to enter these facts in his return at length, &c. This affidavit was not laid before the commissioner, and therefore if it were upon the merits of the issue tried before him, could not be noticed by the judge on the appeal; but as it relates to a mere collateral matter respecting the execution of the duty in taking the testimony, and the fact is stated by the magistrate, and noticed by the commissioner in his answer to one of the reasons of appeal, I have thought it ought to be considered.

On the hearing of the parties, according to the notice given, before the commissioner, on the evidence so taken, (except that of Mr. Harris, which was rejected as inadmissible,) and on the 24th of January the decision of the office was pronounced, awarding priority of invention to Harris; from which decision Nichols appealed, and upon which the case is before me. And according to due notice of the time and place of hearing given by me, the commissioner has laid before me the grounds of his decision in writing, in answer to the reasons of appeal filed by the appellant, together with said reasons and the original papers and evidence in the cause. The respective parties appeared by their counsel and submitted the case upon their written arguments.

Various reasons of appeal were filed—some to the admissibility and others relating to the merits of the question in issue. It is my purpose to consider those of the first description. They are the second, fifth, and sixth.

The second is an objection to the wife of Mr. Harris, the appellee, as a witness on his behalf. This objection was overruled by the justice but sustained by the commissioner, and very properly, I think.

The sixth is because the magistrate refused to compel John Newell, one of the witnesses offered by said Harris, to answer certain interrogatories propounded to him by the counsel of said Nichols, although he at first ordered him to answer the same, as will appear by his return. The interrogatory alluded to was in these words: "Did the lamp you showed to Mr. Harris have a wire-gauze tube silvered?" The witness had been called on the part of Mr. Harris, and previously answered the fifth and sixth interrogatories on the direct examination. The fifth is: "Please state the earliest time, if you can fix upon any time earlier than the 19th of May, 1852, at which you had any knowledge of such invention by Mr. Harris." He answered: "I do not think I can tell any day in particu'ar before the 19th of May; I had conversations with him in April; I showed him one of my lamps, and that led to the conversation." The sixth interrogatory: "State what was said in that conversation, and state what Mr. Harris at that time claimed as his discovery, and the description which he gave you of it." Witness answered: "Mr. Harris remarked to me that my glass lamp was safe, except as to the liability to fracture; he said his was to have a metallic lining, but I cannot say that I fully comprehended his meaning; the manner in which he intended to apply it to the lamp I did not fully comprehend at the time."

The counsel for Nichols contends that in these answers the witness gives a date and fixes it by reference to his lamp, which he then showed Mr. Harris, and which was the origin of the conversation. He (the counsel) claimed to show what particular lamp Newell referred to, and then to examine him as to the time when he first invented that lamp, which the counsel believed was not until the close of 1852 or the beginning of 1853; and hence if that were the lamp meant by him, he must have made a mistake as to time of nearly a year. He also states some other parts of the examination, particularly the witness' answer to the first cross-interrogatory and the date of the patent referred to, which show the witness' mistake about the time and the relevancy of the questions. In answer to the objection thus involved in the sixth reason of appeal, the commissioner says: "The sixth reason, at most, could affect the testimony of Newell alone; and in relation to him the magistrate exercised a discretion which the undersigned saw no reason to take exception to." The question related to the private business of the witness; and if intended to affect his credit, it should have been so stated by the counsel so propounding it. The magistrate states as his reason that the answer thereto would expose the secrets of the witness' trade and business. With respect to its being incumbent on the counsel, "if intended to affect the witness' credit, to have so stated it," it should be remembered that it was on cross-examination that the interrogatory was put, in which it is the practice to allow much greater indulgence, and that to have stated his purpose would have defeated his object; and more especially should it have been al-

lowed, as the witness showed himself to be an unfair, suspicious witness by his answer to the first direct interrogatory. With respect to the protection claimed for the witness—that the answer would expose his private affairs—if this were even conceded to be his right under some circumstances, yet as he had, in answer to an interrogatory put to him on his direct examination, voluntarily referred to the lamp, and given a partial description, I think the objection came too late.

The fifth reason is, because all the evidence in behalf of Harris is inadmissible, having been taken by a magistrate who was a partner of the counsel of Harris, as will appear by his return. To this the commissioner answers that "the relation found to subsist between the magistrate before whom the testimony was taken and the counsel of Harris was not alone a legal ground for rejecting the evidence. The office is aware of no rules of law or practice that would, in the absence of a direct charge of error in the proceedings, make the relations subsisting between these parties a proper reason for excluding evidence in a case where the magistrate was shown to have no other interest. How far it might affect the credibility of the witnesses, the judge would determine; with the commissioner, it had no weight."

The authority to take the testimony was under the rules of the office for taking and transmitting evidence, &c.; particularly under the third rule, which is, as before stated, "that before the deposition of a witness or witnesses be taken by either party notice should be given to the opposite party of the time and place when and where such deposition or depositions will be taken, so that the opposite party, either in person or by attorney, shall have full opportunity to cross-examine the witness or witnesses; and such notice shall, with proof of service of the same, be attached to the deposition or depositions, whether the party cross-examine or not; and such notice shall be given in sufficient time for the appearance of the opposite party and for the transmission of the evidence to the patent office before the day of hearing." There is no express specific provision in this or in either of the rules established by the office against the counsel or attorney of either of the parties acting under said third rule; and it may be true, as the learned commissioner has supposed, that there is none such expressly declared in any of the rules of law on patent subjects; but I think it will appear that on principle and on precedent in analogous cases the settled law is that such a relation does render the person incompetent to discharge such a trust. The authority to make rules and regulations on the subject is derived to the commissioner, as also before stated, under the twelfth section of the act of March 3d, 1839, by which it is enacted "that the commissioner of patents shall have power to make all such regulations in respect to the taking of evidence to be used in contested cases before him as may be just and reasonable." To understand what the legislature meant by "just and reasonable," in this connection, it must be supposed they had in their mind the established principles and precedents in like cases. Upon principle, every party has a right to expect in the administration of justice that his cause shall be fully and impartially examined and tried. The examination and testimony of witnesses forms a most essential part of that trial; and to that end the judge or functionary who conducts the proceeding as such must be in a condition to be entirely indifferent between the parties. Can this be the case where the officer is also the retained counsel in the case, with all the usual sympathies and desires and biases in favor of his client's cause, and selected by him for the purpose? The magistrate who acted in this case under the delegated power of the commissioner who was to try the cause shared with him in this most important part of the preparation for the trial the judicial power. Could any rule, therefore, which would authorize such a person to examine and take the testimony be just and reasonable, within the requirements of the statute?

Upon authority, the principles which are thought applicable will be drawn from other cases of trial where a similar mode of taking evidence is practiced. It seems to have been received into the practice of the common-law courts, by analogy from the chancery court, and by that court from the rules of the civil law, i. e., the commission to take depositions, at the instance of the parties, to certain persons named by them, with power, &c. It will be unnecessary for the present purpose to state the particular details of the proceeding, one of which, however, required the closing of the commission and transmitting the whole proceeding, with almost the same authenticity as that established by the patent office. I proceed to show who were deemed eligible to act in that capacity. In 1 Har. Ch. Prac. pp. 440, 441, it is stated: "The common exceptions to a commissioner are: First, that he is of kindred, allied to the party for whom he is named; second, that he is master to the party—his landlord or partner; third, that he hath a suit at law with the party adverse to him, for whom he is named commissioner, or is of counsel, or is attorney or solicitor or follower of the cause on one side; fourth, that the party is indebted to him, or any other apparent cause of partiality or siding with either side." So, also, from the provisions of the judiciary system of the United States (1789) c. 20, § 30 [1 Stat. 88], describing what shall be the mode of proof in all the courts of the United States, &c.: "When the testimony of any person shall be necessary in any civil cause depending in any district in any court of the United States who shall live at a greater dis-

tance from the place of trial than one hundred miles, or is bound on a voyage to sea, or is about to go out of the United States or out of such district, and to a greater distance from the place of trial than as aforesaid before the time of trial, or is ancient or very infirm, the deposition of such person may be taken de bene esse before any justice or judge of any of the courts of the United States or before any chancellor, justice, or judge of a supreme or superior court, mayor, or chief magistrate of a city or judge of a county court or court of common pleas of any of the United States, not being of counsel or attorney to either of the parties or interested in the event of the cause," &c.

It may be observed that the being of counsel or attorney to either of the parties is placed in the same category with being interested in the event of the cause.

I might add what has been the practice under the laws of Maryland and Virginia in their courts, and the invariable practice and rule of the circuit court of this district, sanctioned and affirmed by the supreme court of the United States; but I think I have shown enough to make it clear that the magistrate by whom the examinations were made and by whom the depositions were taken was legally incompetent for the purpose, and of course that the depositions must be considered as inadmissible evidence in the case. As the decision of the commissioner was grounded thereon, it is erroneous, and must be annulled, reversed, and set aside; and I do so hereby determine and decide, and that he do further proceed in said cause according to law.

[NOTE. The commissioner decided that priority of invention was in Harris. From this decision an appeal was taken to the circuit court, where the commissioner's decision was affirmed. Case No. 10,244.]